Galatea DeLapp, CA Bar #181581
Attorney at Law
1541 East Fairmont Ave., Suite 104
Fresno, CA 93704
(559) 803-0471


Attorney for Defendant
LOUIE SANTIAGO SEJA


UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LOUIE SANTIAGO SEJA ,<br><br>Defendant. | No. 1:19-CR-00243-NODJ<br><br>DEFENDANT'S SENTENCING MEMORANDUM<br><br>Date: November 11, 2024 |

**I. Introduction**

The defendant, LOUIE SANTOAGO SEJA, submits this memorandum to highlight the procedural history and unique factors in his case that warrant a sentence of 151 months, the low end of the guideline range, and 120 months of supervised release. Mr. Seja agreed to 120 months supervised release and the Government agreed to recommend 120 months supervised release as part of the plea agreement. (Dkt. 40 p5:6-7 &  7:19-20).  Mr. Seja's request balances the requirements of 18 U.S.C. § 3553(a) with the challenges he has faced, particularly his extensive history of mental illness, substance abuse, and traumatic life experiences, all of which have contributed to his offense conduct. He further requests placement in the Residential Drug Abuse

Program (RDAP) to receive vital mental health and addiction treatment during incarceration.

## II. Procedural History

A change of plea hearing commenced via videoconference, during COVID lockdowns on March 7, 2022. During the court's Rule 11 colloquy, Mr. Seja told the court he was on medication for "hearing voices".  (Dkt. 41, See also Dkt. 60 p.4:5-13)[1] This was the first time defense counsel had been informed of these issues and counsel requested the court suspend the completion of the change of plea hearing to obtain and analyze Mr. Seja's jail medical records and make a proper assessment of his ability to competently proceed. Counsel for the government and the court agreed. (Id.)

Counsel made several requests with the jail medical provider for records, all of which were ignored.  Substantial medical records from the Fresno County Jail were eventually obtained, only because the court issued an order to the medical provider to produce them. The need for the order was discussed and issued after an *in-camera* videoconference hearing with this court as part of the August 15, 2022, status conference. (Dkt. 46. See also Dkt. 60 p.4:14-19)

On September 8, 2022, the parties met with the court in chambers via videoconference, and counsel requested Mr. Seja's change of plea hearing be continued until his competency was assessed within a Bureau of Prisons facility.  The request was based on the August 15, 2022, status conference and an analysis of jail records establishing the defendant had consistently, over the course of many months, beginning when the defendant was arrested, told jail staff he was "hearing voices" and needed the medications he had been prescribed in prison to control these symptoms. Jail records substantiated those medications were eventually prescribed by the jail

---

[1] Dkt. 60 is a stipulation of facts drafted and filed by AUSA Enos on April 17, 2023

Defendant Louise Santiago Seja Sentencing Memorandum

medical provider, and as a result his symptoms had resolved according to both the jail medical records and Mr. Seja. (Dkt. 46, See also Dkt. 60 p.4:19-25).

On October 20, 2022, Warden W.Z. Jenkins II of the Bureau of Prisons' Metropolitan Detention Center ("MDC") in Los Angeles wrote the court a letter, wherein he advised that MDC needed more time than required under the law to start and complete the competency evaluation due to indefinitely restricted modified operations, quarantines, and a large influx of cases. He advised the court would receive the competency evaluation by January 4, 2023.  (Dkt. 60 p.5:5-19).

In a stipulation of facts drafted and filed by AUSA Enos on April 17, 2023, it was reported that the Bureau of Prisons still had not issued a report assessing Mr. Seja's competency. In fact, a week earlier, counsel for both parties were independently contacted by Dr. Tiffany Smith of the BOP's Medical Detention Center in Los Angeles, who advised the colleague previously assigned to assess Mr. Seja's competency no longer worked for the BOP, and discovery materials previously sent to BOP by both parties could not be located. As a result, Dr. Smith asked counsel for each party to again provide a copy of all materials previously provided to the BOP. Counsel for both parties immediately re-submitted the requested materials. Dkt. 60 p.5:20-28

On July 27, 2023, the parties finally received a report assessing Mr. Seja's competency. The report mentioned for the first time that Mr. Seja had been in a mental health halfway house after being released from prison. Dkt 62 p 4-15:19[2].  The conclusions of the report quoted in PSR ¶ 63 report largely focused on Mr. Seja's competency during the evaluation time period at MDC.

_____

[2] Dkt. 62 is a stipulation of facts drafted and filed by AUSA Gappa

3

It should be noted that this quote does not address at all the medical records submitted establishing he was prescribed psychotropic medications and mood stabilizers at the Fresno County Jail after he repeatedly reported he was hearing voices nor does the report reflect upon records establishing why he was prescribed these medications while at the Fresno County Jail and while in prison.

These offenses were committed shortly after the defendant was released from state prison in January 2019, where he had been diagnosed with and treated for psychiatric conditions (Dkt. 76 ¶ 61). Shortly after he was released without his medications to a halfway house and was later unable to pick up his mental health prescriptions from a local pharmacy, he returned to using drugs and engaged in the offense conduct.

**III. FACTORS UNDER 18 U.S.C. § 3553(a)**

1. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

While the offense conduct is serious, understanding the context of Mr. Seja's actions is essential. Mr. Seja's life has been marked by trauma, untreated mental illness, and substance abuse, all of which have driven his behavior. His upbringing was chaotic and marred by abuse and instability. Raised in an environment of substance use and violence, Mr. Seja lacked positive role models and learned harmful coping mechanisms from an early age. By the time he reached adulthood, he had already experienced significant substance use disorder and untreated mental health symptoms, leading to a cycle of criminal justice involvement.

Records indicate Mr. Seja has consistently experienced auditory hallucinations and other psychiatric symptoms since his initial incarceration. While his competency has been affirmed for the purpose of sentencing, his mental health records from Fresno County Jail reveal ongoing psychotropic medication treatment for hallucinations. The severity and persistence of his mental

4

health symptoms and the lack of community support or continuity in treatment significantly affected his conduct in the instant offense.

2. <u>The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, and Afford Adequate Deterrence</u>

A sentence of 151 months, combined with participation in RDAP and follow-up mental health care, serves the need for a serious punishment that respects the law and addresses public safety concerns. The combination of treatment and incarceration is critical here, as it provides not only adequate punishment but also the rehabilitative support Mr. Seja needs. A term of 151 months at the low end of the guideline range would allow Mr. Seja to participate in RDAP and make meaningful progress in treatment, both reducing recidivism risk and promoting respect for the law.

3. <u>The Need for the Sentence to Protect the Public from Future Crimes of the Defendant</u>

While the PSR raises concerns about public safety due to Mr. Seja's prior offenses, it does not fully account for the therapeutic potential of a structured mental health and addiction treatment program during incarceration. Studies consistently show that untreated mental illness and substance abuse strongly correlate with recidivism. However, Mr. Seja's request for RDAP placement and his commitment to treatment demonstrate a proactive approach to addressing these issues. By participating in RDAP and other treatment programs, Mr. Seja has an opportunity to learn new coping skills and make the necessary behavioral changes to prevent further offenses upon release.

4. <u>The Need for the Sentence to Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner</u>

5

Given Mr. Seja's history, an RDAP placement is essential. His mental health and substance abuse challenges have been consistently documented, and the forensic evaluations underscore his need for stable treatment in an environment that offers psychiatric support. By sentencing Mr. Seja to 151 months with RDAP placement, the Court can ensure he receives treatment tailored to his needs, including psychotherapy, addiction counseling, and life skills training. Such comprehensive support has the potential to reduce recidivism, ensuring his eventual release aligns with the goal of rehabilitation.

5. <u>The Kinds of Sentences Available and Sentencing Range Established by the Guidelines</u>

A sentence at the lower end of the guideline range—151 months—meets the statutory requirements under § 3553(a). Given the nature of Mr. Seja's mental health issues and the role they play in his behavior, a low end guideline sentence would achieve a reasonable, just outcome. The Government has agreed to a term of 120 months of supervised release, and the defense respectfully requests that this be considered the maximum period of supervision to allow Mr. Seja to transition back into the community under supported supervision, rather than the probation-recommended 180 months.

6. <u>The Need to Avoid Unwarranted Sentencing Disparities</u>

By granting Mr. Seja's request for a low-end guideline sentence, the Court ensures parity with similarly situated defendants who, despite serious offenses, suffer from untreated mental illness and have struggled to adapt in the community. A sentence of 151 months with a treatment recommendation aligns with § 3553(a)(6)'s directive to avoid disproportionate sentencing for those with unique challenges.

### III. CONCLUSION

In light of Mr. Seja's background, mental health needs, and commitment to rehabilitation, he respectfully requests a sentence of 151 months with placement in RDAP, followed by a

Defendant Louise Santiago Seja Sentencing Memorandum

supervised release period of 120 months. This sentence appropriately balances the statutory

objectives of punishment, rehabilitation, and community safety, allowing Mr. Seja to receive the

necessary treatment while protecting the public and fostering long-term behavioral change.

### VII. Conclusion

For the reasons stated above, the defendant respectfully requests that this Court impose a

low-end sentencing guideline of 151 months' imprisonment followed by 120 months of

supervised release, with a recommendation for RDAP. Such a sentence is sufficient but not

greater than necessary to fulfill the purposes of sentencing outlined in 18 U.S.C. § 3553(a).

Respectfully submitted

Dated: 10/28/2024

/s/ *Galatea DeLapp*
GALATEA DeLAPP
Attorney for Defendant
LOUIE SANTIAGO SEJA

7